**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-14194

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KEVIN VALDEZ,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cr-00022-KKM-TGW-8

————————————

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Kevin Valdez brings this appeal to challenge the factual findings underlying the district court's Guidelines range calculation and sentence. We affirm.

## I.

Kevin Valdez joined a conspiracy to import cocaine and other narcotics from Puerto Rico into Florida through the United States Postal Service. A "high-level dealer," Valdez was responsible for the possession and distribution of large amounts of cocaine—764 grams, to be exact. He was charged with (and pleaded guilty to) one count of conspiracy to distribute or possess with intent to distribute cocaine. *See* 21 U.S.C. §§ 846, 841(b)(1)(C).

At sentencing, the district court applied a two-level enhancement based on the firearms found in his coconspirators' homes. *See* U.S. Sentencing Guidelines § 2D1.1(b)(1) (Nov. 2024). In its view, when "you're dealing with this amount of cocaine and you're a distributor yourself, in light of the facts here, I think it is reasonably foreseeable that firearms would be used." Next, the court declined to apply a two-level minor role reduction, finding that Valdez is "not substantially less culpable in reference to" others involved in the criminal activity. *See id.* § 3B1.2(b). Based on these findings, Valdez faced an advisory Guidelines range of 70 to 87 months' imprisonment. In the end, the court sentenced him to 85 months.

On appeal, Valdez challenges the district court's factual findings with respect to the firearms enhancement and the minor role reduction.

## II.

"We review the district court's findings of fact under U.S.S.G. § 2D1.1(b)(1) for clear error." *United States v. Pham*, 463

F.3d 1239, 1245 (11th Cir. 2006) (quotation omitted). The district court's factual findings regarding the defendant's role in the offense are also reviewed for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999).

Clear error review is "highly deferential." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005). We will not disturb the district court's factual findings unless we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation omitted).

## III.

Here, we cannot say that the factual findings underlying the district court's Guidelines range calculation were clearly erroneous.

## A.

Guideline § 2D1.1(b)(1) provides a two-level sentencing enhancement when the offense conduct involves the possession of a firearm. This enhancement "may be applied when the firearm is possessed by a co-conspirator," "even where defendants claim they were unaware of the firearm possession." *Pham*, 463 F.3d at 1245–46. For the enhancement to apply in this case, the government must prove by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-

conspirator possession was reasonably foreseeable by the defendant." *Id.* at 1245 (quotation omitted).

Valdez does not dispute the first three elements—only the fourth. He challenges as clearly erroneous the district court's factual finding that his coconspirators' firearm possession was reasonably foreseeable. As Valdez points out, the government did not present evidence that he discussed firearms with his coconspirators or that he visited the stash houses where law enforcement found firearms.

Even still, there was enough evidence to suggest that his coconspirators' firearms possession was reasonably foreseeable. Because "guns are a tool of the drug trade," there is a "frequent and overpowering connection between the use of firearms and narcotics traffic." *Id.* at 1246 (quotation omitted). As the FBI special agent explained at sentencing, firearms come up "[e]xtremely frequently" in drug trafficking conspiracies, allowing participants "to protect themselves, protect their product, and protect their proceeds." *See also United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). In fact, "[e]very drug investigation" that the agent has been a part of has involved firearms.

This particular investigation yielded abundant evidence indicating that firearms were "part and parcel" of the scheme. *Id.* Coconspirator Yoned Onil Santana Vazquez—"Valdez's source of supply"—trafficked over two kilograms of cocaine. Santana Vazquez obviously "felt the need to protect [his] inventory and proceeds" in the course of that "high risk activity," given that law

24-14194                Opinion of the Court                5

enforcement discovered both firearms and drugs at his residence. *Id.* Where, as here, "the conspiracy involved trafficking in lucrative and illegal drugs," "we have found it reasonably foreseeable that a co-conspirator would possess a firearm." *Pham*, 463 F.3d at 1246. The district court did not clearly err by making that same finding in this case.[1]

### B.

Guideline § 3B1.2(b) provides a two-level reduction if the defendant was a "minor participant" in the criminal activity. But a defendant "is not automatically entitled to a minor role adjustment merely because she was somewhat less culpable than the other discernable participants." *Rodriguez De Varon*, 175 F.3d at 944; *see United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015). Rather, the defendant must prove by a preponderance of the evidence that he is "less culpable than most other participants." *United States v. Moran*, 778 F.3d 942, 980 (11th Cir. 2015).

Valdez has not made that showing. He concedes that he is responsible for 764 grams of cocaine—more than at least three codefendants. And as a "high-level dealer" himself, Valdez personally negotiated the price and quantity of "a significant

---

[1] Valdez did not argue below (and does not argue on appeal) that "it is clearly improbable that the weapon was connected with the offense." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013) (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)). And he has conceded that the firearms "had some purpose or effect with respect to the drug trafficking crime." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006) (quotation omitted).

amount" of cocaine, bargaining with the supplier to obtain a "greater amount of narcotics than most individuals in this case." In the FBI agent's experience, a mere "courier or a package catcher" would not have the authority to negotiate in this way. On this record, we cannot say that the district court clearly erred in finding that Valdez was more than a "minor participant."

⋆        ⋆        ⋆

We **AFFIRM**.