**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11546

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CLOEPHA FRANKS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:23-cr-00119-KD-MU-1

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Cloepha Franks appeals his conviction under 18 U.S.C. § 875(c) for transmitting threats in interstate commerce. Franks was fired from his construction job after leaving his employer a series

of profanity-laden voicemails angrily demanding a raise. The next month, he sent his former supervisor, Kelly Watts, a series of text messages threatening to kill him. Based on these text messages, he was arrested, tried, and found guilty by a jury of violating section 875(c). Franks was sentenced to 33 months in prison.

On appeal, he argues that the district court made three errors. First, he asserts that the district court erred in denying his motion for judgment of acquittal because the government failed to introduce sufficient evidence that he knowingly or intentionally transmitted a true threat through interstate commerce. Second, he argues that the district court erred by excluding earlier non-threatening text messages he sent to the supervisor because they were relevant to the supervisor's state of mind when he received the threatening text messages. Third, he argues that the district court erred by applying an enhancement for offenses involving more than two threats because his string of texts constituted one threat. Because each of these arguments fails, we affirm.

## I.

We will start with Franks's arguments about the sufficiency of the evidence. We review a challenge to the sufficiency of the evidence and the denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal *de novo*. *United States v. Chafin*, 808 F.3d 1263, 1268 (11th Cir. 2015). We will uphold the district court's denial of a motion for judgment of acquittal if a reasonable trier of fact could conclude that the evidence establishes the defendant's guilt beyond a reasonable doubt. *United States v. Holmes*, 814 F.3d

1246, 1250 (11th Cir. 2016). We view all facts and inferences in the light most favorable to the government. *Id.*

18 U.S.C. § 875(c) prohibits "transmit[ting] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another." A true threat is a serious expression conveying that a speaker means to "commit an act of unlawful violence." *Virginia v. Black*, 538 U.S. 343, 359 (2003). A statement can count as a threat based solely on its objective content. *Counterman v. Colorado*, 600 U.S. 66, 72 (2023). To obtain a conviction under section 875(c), the government must prove beyond a reasonable doubt that (1) a communication was transmitted in interstate commerce; (2) the communication contained a threat; and (3) the defendant intended to issue threats or knew they would be perceived as such. 18 U.S.C. § 875(c); *Elonis v. United States*, 575 U.S. 723, 732 (2015). A showing of recklessness is enough to satisfy the *mens rea* requirement. *Counterman*, 600 U.S. at 79. Franks does not dispute that the communication was transmitted in interstate commerce.

The district court did not err in denying Franks's motion for judgment of acquittal because a reasonable trier of fact could find Franks guilty of transmitting a threat through interstate commerce. Franks promised to shoot Watts. He said he knew where Watts worked (which was true) and when (also true). He sent at least ten of these messages over a period of several hours, despite Watts's repeated requests to be left alone. Graphic promises to commit murder are paradigmatic threats. *See United States v. Callahan*, 702

F.2d 964, 966 (11th Cir. 1983) (finding letter "threatening on its face" where it stated an intent to commit murder); *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974) (finding it "clear beyond cavil" that a promise to commit murder was a threat under section 875(c)). Like the letter in *Callahan*, Franks's text messages specified "a date, time, and place" where the murder would occur: Monday morning at the "Cross road." *Id.* Franks's repeated promises to murder Watts were threats under section 875(c).

A reasonable jury could also find that Franks intended to convey a threat. *Elonis*, 575 U.S. at 740; *Counterman*, 600 U.S. at 69. Intention to convey a threat can be determined through circumstantial evidence of mental state. *United States v. Curtin*, 78 F.4th 1299, 1306 (11th Cir. 2023). The defendant's "own words" are powerful evidence of intent to convey a threat. *Id.* Franks warned Watts that he would "never know when I [am] going to pull up you." This, along with Franks's numerous other promises to kill Watts, was ample evidence to support the jury's determination that Franks intended to convey a threat.

In response, Franks argues that there was not sufficient evidence to convict because Watts's reaction was not "indicative of someone who considered the texts to be truly threatening." Franks cites Watts's responses to Franks's text messages, in which Watts claimed he was not afraid of Franks. But there was more than enough evidence to the contrary for the jury to reject Franks's argument. Watts reported Franks's messages to his company's human resources manager the morning immediately after receiving

them. He changed his team's morning schedule, arrived to work earlier than normal, and instructed his employees to come an hour late. He notified both state police and the FBI of Franks's threats. Watts clearly took Franks's threats seriously.

Viewing the evidence in the light most favorable to the government, we therefore conclude there was sufficient evidence to support the jury's verdict.

## II.

We turn now to Franks's argument about the admissibility of additional text messages that he sent Watts weeks before he began threatening to kill him. "Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion." *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983). A district court abuses its discretion if it applies an incorrect legal standard, employs improper procedures in reaching its determination, makes clearly erroneous findings of facts, or commits a clear error of judgment. *United States v. Harris*, 989 F.3d 908, 911-12 (11th Cir. 2021). The proponent of evidence bears the burden of establishing its admissibility. *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1308 (11th Cir. 2022).

At trial, Franks moved to admit his earlier text messages to Watts under the rule of completeness. The rule of completeness, codified in Federal Rule of Evidence 106, provides: "If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part — or any other

statement — that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed. R. Evid. 106. "Rule 106 does not automatically make the entire document admissible." *United States v. Pendas-Martinez*, 845 F.2d 938, 944 (11th Cir. 1988). Courts consistently hold that the Rule applies only to additional material that is relevant and necessary to "qualify, explain, or place into context the portion already introduced." *Id.*

The district court declined to admit Franks's previous text messages because they were hearsay and irrelevant. Franks argues that the texts were not being offered for the truth of the matter asserted, but for their effect on Watts. Franks maintains that, under the rule of completeness, the earlier text messages are necessary to contextualize Franks's later statements. Franks believes that they are relevant to whether a reasonable person would have considered Franks's texts to be threats.

The texts in question began in April 2023, one month before Franks's threats began. Franks sent Watts links to music videos, as well as a message wishing him a happy Easter and thanking Watts for hiring him. Franks also said he was entitled to a raise and called Watts a "btich" [sic], before thanking Watts for "putting up with [Franks]".

We cannot say the district court abused its discretion in concluding that these texts are irrelevant to whether Franks's later texts are objectively threatening. First, they occurred in April. The fact that Franks's tone was less threatening is of no surprise; he

hadn't been terminated yet. Second, the fact that Franks wished his supervisor a happy Easter does not suggest that Watts didn't believe Franks to be capable of violence. These unrelated messages were neither relevant nor necessary to qualify, explain, or contextualize Franks's later threats to murder Watts.

The district court acted within its discretion in declining to admit Franks's earlier text messages.

### III.

Lastly, we address Franks's arguments about his sentence. When reviewing the district court's findings with respect to Guidelines issues, we consider legal issues *de novo*, factual findings for clear error, and the court's application of the Guidelines to the facts with due deference, which is akin to clear error review. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). To be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake was committed. *Id.* Notwithstanding an error in applying the Guidelines, this Court will not reverse if the district court would likely have sentenced the defendant the same way regardless, and the sentence was substantively reasonable. *United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006); *United States v. Grushko*, 50 F.4th 1, 18 (11th Cir. 2022).

In Franks's Presentence Investigation Report, the probation officer increased the offense level by two in accordance with United States Sentencing Guidelines Manual § 2A6.1(b)(2)(A) (Nov. 2023), which applies to offenses "involving more than two threats". Factoring in a base offense level of twelve to a category IV criminal

history, the probation officer recommended a guideline imprisonment range of 27 to 33 months. The court sentenced Franks to 33 months.

Franks argues it was error to apply the two-level increase under section 2A6.1(b)(2)(A) because Franks's text messages constituted one single threat. He argues his texts all occurred in a short period of time and conveyed "essentially the same message" and should therefore be considered "a single episode or occurrence." But we need not decide whether Franks's text messages constituted one threat because the district court expressly stated that it "would have imposed [its] sentence regardless of whether the plus two [was] appropriate." *See United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). The district court's statement, which it made at the end of the sentencing hearing, after Franks's allocution and sentencing arguments, leaves no doubt that any error in adding the "plus two" would not have affected the sentence. *Cf. United States v. Delgado*, 981 F.3d 889, 900 n.8 (11th Cir. 2020) (suggesting that *Keene* statements should usually be after considering the sentencing factors and allocution, rather than before).

For our part, we cannot say the district court's sentence is substantively unreasonable. Even assuming an error occurred and the lower guidelines range applied, the sentence was substantively reasonable in the light of Franks's five previous convictions, the fact that he committed the instant offense while on probation, and the seriousness of his threats. *Grushko*, 50 F.4th at 20. Because the

alleged error did not affect the district court's decision, any error was harmless. *Scott*, 441 F.3d at 1329.

Finally, Franks argues he was entitled to a reduction to his Guidelines range under section 2A6.1(b)(6) of the United States Sentencing Guidelines, which applies if the offense evidenced "little or no deliberation". Franks argues that he was too drunk when he sent the texts to have deliberated. He did not provide any credible evidence supporting this allegation. Franks sent his messages over the course of three hours. The timestamps show that he took breaks of thirty minutes to over two hours between sending Watts death threats. Accordingly, at sentencing the district court found that Franks had enough time for deliberation. The court also rejected Franks's request for a voluntary intoxication instruction. Considering the evidence, the district court's refusal to grant the reduction was not clearly erroneous.

## IV.

The judgment of the district court is **AFFIRMED.**